

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 7, 2024

**BY ECF**

The Honorable Jennifer L. Rochon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Bevelyn Williams and Edmee Chavannes*, 22 Cr. 684 (JLR)

Dear Judge Rochon:

      The parties write jointly to address the issues the Court raised with respect to the jury charge at the February 2, 2024 final pretrial conference.

**Request No. 1**

      The parties defer to the Court with respect to the duty to weigh evidence without bias charge and agree that charging the jury regarding a duty to weigh evidence without prejudice would satisfy this charge.

**Request No. 8**

      With respect to the definition of "physical obstruction," the Court inquired as to whether the jury charge should reflect that "some sort of physical act is required for the physical obstruction portion of that charge and that nonphysical actions, such as yelling or something that may make it more unpleasant or even emotionally difficult, wouldn't constitute physical obstruction." (Tr. 76). The Court's inquiry was based on language included in *State of New York v. Operation Rescue*, 273 F.3d 184 (2d Cir. 2001).

Government Request

      As an initial matter, the Government respectfully requests that the Court not include the second sentence of the Government's previously proposed definition of "physical obstruction," which reads, "A defendant need not obstruct a particular person at a particular time, but rather need only obstruct an entrance to or exit from a clinic with the specific intent to do so." Upon review of additional legal authorities, the Government submits that this sentence should be omitted from the jury charge for two reasons. First, the second sentence of that paragraph fails to account for the second clause in the statutory definition of physical obstruction ("or rendering passage to

or from such a facility . . . unreasonably difficult or hazardous"). *See* 18 U.S.C. § 248(e)(4). As the first sentence of this paragraph properly accounts for both prongs of the definition in § 248(e)(4), repetition of the definition would be superfluous. Second, the second sentence improperly suggests that a physical obstruction can only occur at the entrance to or exit from a clinic, which is not consistent with legal precedent. *See United States v. Mahoney*, 247 F.3d 279, 283-84 (D.C. Cir. 2001) (affirming district court's physical-obstruction finding where the defendant had "positioned himself three feet" from a door that was "rarely used" and "generally locked"); *New York by James v. Red Rose Rescue,* No. 23-CV-4832 (KMK), 2023 WL 8472727, at *13-16 (S.D.N.Y. Dec. 7, 2023) (granting preliminary injunction on basis of physical obstruction where protestor refused to leave clinic waiting room, which caused a disruption in care; caused patients to leave the facility; and caused the police to arrive); *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006) (obstructing or slowing access to driveways or parking lots constituted physical obstruction). The defense does not object to this deletion.

With respect to the Court's inquiry regarding adding language to instruct the jury that non-physical actions do not constitute physical obstruction, the Government opposes the addition of such language. The Government has not identified any prior FACE Act prosecution where similar language was included in the jury charge. Moreover, the Government's theory in this case does not rely on non-physical actions, such as yelling alone, to prove physical obstruction. Instead, the Government's proof at trial regarding physical obstruction will focus on the defendants' actions in actually—and physically—blocking access to clinic entrances, for example, by standing in front of the door of the Manhattan Planned Parenthood. Accordingly, such an instruction, which goes beyond the statutory language, is unnecessary in this case.

Should the Court disagree and conclude that additional language on the definition of "physical obstruction" is necessary to incorporate language from *State of New York v. Operation Rescue*, 273 F.3d 184 (2d Cir. 2001), the Government respectfully submits that the defendant's proposed language does not accurately or completely reflect the parameters of "physical obstruction" under the law. On this point, the Government requests that the Court consider Judge Karas's recent opinion in *Red Rose Rescue*, which includes a detailed discussion of the case law addressing the definition of "physical obstruction" in the context of the FACE Act, and how that case law squares with the concept of "constructive obstruction" as discussed in *Operation Rescue*. *See Red Rose Rescue,* 2023 WL 8472727, at *10-11, 14 n.25. In that discussion, Judge Karas noted that the Second Circuit's language in *Operation Rescue* about constructive obstruction was dicta, and held that, while actual obstruction is required, physical obstruction is *not* limited to bodily obstruction but also encompasses "any act rendering passage to the facility unreasonably difficult." *Id.* at *10; *see also Mahoney*, 247 F.3d at 283-84 (affirming district court's physical obstruction finding as defendant's actions in kneeling feet in front of a rarely-used and locked door "contribut[ed] to the demonstration within a few feet of the clinic entrances" and "compelled patients to enter the clinic through the crowded and chaotic rear entrance.") (internal quotation marks omitted); *Cain*, 418 F. Supp. 2d at 480 ("Acts of physical obstruction that are sufficient to create liability under FACE include obstructing or slowing access to driveways or parking lots; standing in front of pedestrians as they try to enter a clinic; blocking clinic doors by standing directly in front of them; blocking patients inside automobiles by standing close to car doors; and participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance.") (internal citations omitted).

Accordingly, if the Court determines that additional clarification regarding the limits of physical obstruction is necessary in this case, the Government respectfully submits that the Court should incorporate additional language reflecting that "physical obstruction" includes "any act rendering passage to the facility unreasonably difficult." The Government proposes the following language:

> Although there must be actual obstruction and actions that merely make the approach to a reproductive health facility unpleasant or even emotionally difficult do not automatically violate the law, physical obstruction is not limited to bodily obstruction. Physical obstruction includes any act rendering passage to the facility unreasonably difficult.

*See, e.g. Cain,* 418 F.Supp.2d at 480; *Mahoney*, 247 F.3d at 284; *Red Rose Rescue*, 2023 WL 8472727 at *10.

Defense Request

With respect to the Court's inquiry regarding adding language to instruct the jury that non-physical actions do not constitute physical obstruction, the defense agrees, and requests the additional language to make clear that physical obstruction cannot be achieved by verbal or other non-physical acts alone.

The defense notes that not only did all of the acts cited above involve some degree of *physical* obstruction (as required by statute), but the expansive *de minimis* application of the "physical obstruction" definition applied by those various district courts is not textually supported by the statute nor is it supported by the limited guidance provided by the Second Circuit.

In *New York v. Griepp*, 2018 WL 3518527 (EDNY 2018), aff'd and remanded 11 F.4th 174 (2d Cir. 2021)), the EDNY district court followed *Operation Rescue* to find that nearly all of the protestor activity complained of by the state in that case did not meet the "physical obstruction" requirement, because "[a]s long as a protestor does not blockade a clinic entrance or exit, he or she is free to stand or pace with a sign unless and until he or she interferes with another person's passage to or from the facility. At that point, the protestor must yield space for the other person to pass….The Second Circuit explicitly held that, under FACE, a protestor may also approach patients, follow them closely, and even yell at them, because making their approach to the Clinic 'unpleasant' or 'emotionally difficult' does not make passage to or from the facility 'unreasonably difficult or hazardous.'… To find that the defendant physically obstructed access to a reproductive health center in violation of FACE and NYSCAA, the court must find that there was 'an actual obstruction.'" *Griepp,* 2018 WL 3518527 at *41-42. On appeal in *Griepp* – in her dissent to a decision that was subsequently vacated on rehearing – Chief Judge Livingston critiqued the "abandonment" of the statutory language on physical obstruction by those with more expansive views, noting that there is a distinct difference between the FACE Act and "buffer zone" statutes and that decisions that would prohibit the "most incidental" or "de minimis" contact or obstruction of patients or providers under the FACE Act would effectively suppress legitimate First Amendment activity and render them unconstitutional. *New York v. Griepp*, 991 F.3d 81 at 142-144 (2021) (vacated 991 F.2d 1258) (Livingston, C.J., dissenting in part).

The defense objects to the language in the Government's proposal and requests that it be modified as follows:

> "Physical obstruction" requires that there be an actual obstruction. Actions that merely make the approach to a reproductive health facility unpleasant or even emotionally difficult, including approaching patients or staff, following them, and yelling at them, are not prohibited. The actual physical obstruction must make ingress or egress from the facility impossible, unreasonably difficult, or hazardous.

*See, e.g. Operation Rescue Nat'l*, 273 F.3d 184 at 195-96 (2d Cir. 2001); *Cain,* 418 F.Supp.2d at 480; *Griepp*, 2018 WL 3518527 at *41-42 (EDNY 2018).

**Request No. 9**

Joint Request

With respect to the definition of "intentionally," the Court inquired as to whether the jury charge should include an instruction on intent and whether the charge should address the "concept of acting inadvertently or by mistake." (Tr. 81-82). The Court cited to Model Federal Jury Instruction for Criminal Matters 3A-4 as a possible source for such a charge. The parties are in agreement that the Court should so instruct the jury by adding the following language to the end of the first paragraph of the charge:

> Before you can find that the defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully. That is, the defendant's acts must have been the product of the defendant's conscious objective rather than the product of a mistake or accident.

Sand, et al., *Modern Federal Jury Instructions*, Instr. 3A-4.[1]

In addition, the defense requests that the Court include the following language, to which the Government does not object, if combined with the aforementioned language:

> The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent. You may infer, but you are certainly not required to

---

[1] The parties note that such an instruction is also consistent with Request 21, which defines "knowingly" and "willfully" with respect to the conspiracy offense as requiring that "a defendant's actions must have been her conscious objective rather than a product of a mistake or accident, mere negligence, or some other innocent reason."

>infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

Adopted from O'Malley, *Federal Jury Practices and Instructions*, Instr. 17:07.

**Request 10**

Joint Request

> With respect to whether the defendant acted "because" employees of the Manhattan Planned Parenthood were or had been providing reproductive health services, or "because" patients of the Manhattan Planned Parenthood were or had been obtaining reproductive health services, the Court inquired whether the causation standard set forth in the model pattern instructions for other civil rights statutes should be incorporated here which defines "because of" as serving a "substantial motivating factor" in the defendant's actions. (Tr. 84-88).

> After reviewing additional legal authorities, the parties agree that further clarification of the meaning of "because of" is necessary, but would submit that the Court rely on legal precedent interpreting "because of" in federal criminal statutes, which has been read to impose a but-for causation requirement, rather than a "substantial motivating factor" requirement. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.' In the language of law, this means [the] 'because of' test incorporates the simple and traditional standard of but-for causation. That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause."); *Burrage v. United States*, 571 U.S. 204, 205 (2014) (noting that the statutory phrase "because of" has "been read to impose a but-for causation requirement"); *see also United States v. Miller*, 767 F.3d 585, 591-594 (6th Cir. 2014) (discussing the motive element and the "but for" requirement of the federal hate crime statute which prohibits "willfully caus[ing] bodily injury to any person . . . because of the actual or perceived . . . religion . . . of [that] person," and holding that "[f]or an assault to be a federal hate crime, the victim's protected characteristic must be a but-for cause behind the defendant's decision to act.").

> Importantly, and in contrast to the defendants' proposal, the case law is also clear that there may be multiple "but for" causes for a single act. *See Bostock* (noting that "[o]ften, events have multiple but-for causes."); *see also United States v. Porter*, 928 F.3d 947, 956 (10th Cir. 2019) (affirming hate crime conviction obtained pursuant to 42 U.S.C. § 3631, which like 18 U.S.C. § 249, requires proof that the defendant acted "because of" race and holding "the jury instructions here required the Government to prove the defendant would not have acted but for the victim's occupancy of his home and the victims race or color. To sustain a conviction under § 3631, [the victim's] race must have been a necessary motivation but not the sole motivation" for the assault.).

> In accordance with those authorities, the parties would therefore propose the following language:

To satisfy this element, the Government must prove that the defendant would not have acted but for employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or but for patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services. Put another way, employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services, must have been a necessary motivation but not the sole motivation for the defendant's actions.

*See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020); *Burrage v. United States*, 571 U.S. 204, 205 (2014); *United States v. Porter*, 928 F.3d 947, 956 (10th Cir. 2019); *United States v. Miller*, 767 F.3d 585, 591-594 (6th Cir. 2014).

Finally, the defense requests that the Court include the following language, to which the Government does not object, if combined with the aforementioned language:

> In determining whether the Government has proved that the Defendant acted as she did because a patient was obtaining or had obtained, or a clinic employee was providing or had provided, reproductive health services, you may consider statements made or language used by the Defendant, the circumstances surrounding the alleged offense, and all other evidence that may shed light on the Defendant's motives.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: ___/s_____
Emily A. Johnson
Mitzi Steiner
Assistant United States Attorneys
(212) 637-2409/-2284

Calvin Scholar, Esq.
Attorney for Bevelyn Beatty Williams

Aaron Mysliwiec, Esq.
Attorney for Edmee Chavannes